IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
TENNESSEE EASTERN DIVISION AT
JACKSON

---

**LEAH REDMOND,** *individually and on behalf of others similarly situated*,

   Plaintiff,

v.

**NPC INTERNATIONAL, INC.,**

   Defendant.

Case No. 13-1037

---

**ORDER GRANTING PLAINTIFFS' MOTION FOR EQUITABLE TOLLING**

---

*I. INTRODUCTION*

This is a Fair Labor Standards Act ("FLSA") collective action, one of five similar cases,[1] initiated on January 30, 2013, by Plaintiff, Leah Redmond, against Defendant NPC International ("NPC"). (Docket Entry ("D.E.") 1.) Since that date, a number of other individuals have opted into the suit. Plaintiffs seek to recover unpaid wages, minimum wages, and overtime wages for Plaintiffs' "off-the-clock" work performed at Pizza Hut restaurants owned by NPC. Before the Court is

---

[1] *See Penley v. NPC Int'l*, No. 13-1031 (W.D. Tenn. filed Jan. 29, 2013) ("current and former shift managers"); *Harris v. NPC Int'l*, No. 13-1033 (W.D. Tenn. filed Jan. 29, 2013) ("current and former cooks"); *Gunn v. NPC Int'l*, No. 13-1035 (W.D. Tenn. filed Jan. 30, 2013) ("current and former tipped employees"); *Jowers v. NPC Int'l*, No. 13-1036 (W.D. Tenn. filed Jan. 30, 2013) ("current and former delivery drivers"); and *Redmond v. NPC Int'l*, No. 13-1037 (W.D. Tenn. filed Jan. 30, 2013) ("current and former customer service representatives").

Redmond's November 11, 2015 motion for equitable tolling of the statute of limitations on behalf of the opt-in plaintiffs and potential opt-in plaintiffs.

## II. FACTUAL BACKGROUND

These five cases, not yet in the discovery phase, have already had a lengthy procedural history.  The lawsuits were summarized by the Sixth Circuit as follows:

> Defendant NPC International, a Kansas corporation, operates Pizza Hut Restaurants in numerous states across the country.  In January 2013, five separate actions were commenced against NPC in the Western District of Tennessee. The plaintiffs in all five cases are represented by the same counsel. Each of the actions asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for unpaid minimum wages and overtime compensation by a different class of current or former employees of NPC. Plaintiff Skylar Gunn brought action on behalf of herself and other similarly situated tipped employees, also classified as waiters/waitresses/servers; plaintiff William Harris proceeded on behalf of cooks; Candace Jowers on behalf of delivery drivers; Tiffney Penley on behalf of shift managers; and Leah Redmond on behalf of customer service representatives. In each case, NPC is alleged to have established uniform policies and practices that denied the named plaintiff and other similarly situated employees compensation they were entitled to, in violation of the FLSA.

*Gunn v. NPC Int'l, Inc.*, 625 Fed. App'x 261, 263 (6th Cir. 2015).  On March 28, 2013, Defendant filed an Emergency Motion to Plaintiffs to Cease and Desist, alleging that Plaintiffs were attempting to recruit potential plaintiffs in an objectionable manner.  (D.E. 21.)  One week later, Magistrate Judge Edward Bryant instructed the parties to "attempt to settle the issues raised in the emergency motion."  (Minute Entry, D.E. 33.)  Shortly thereafter, the parties indicated to the Magistrate Judge that "the issues precipitating the motion ha[d] been resolved."  (Minute Entry, D.E. 36.)  Thus, the emergency motion was dismissed as moot.  (D.E. 38.)

On May 7, 2013, NPC moved to dismiss all of the claims of Redmond and the opt-in Plaintiffs on the grounds of *res judicata*. (D.E. 50.)[2] After full briefing, the motion was denied. (D.E. 68.) The Court found that the monetary settlement in the *Gunn* case pertained only to Gunn himself. Nearly a year after the motion to dismiss, NPC filed an answer to the complaint on April 21, 2014, (D.E. 73), asserting forty-eight affirmative defenses—among them that the FLSA claims were barred "by all applicable statutes of limitation, including, but not limited to, 29 U.S.C. § 255." (D.E. 73 at 10.)

The answer was soon followed by a motion to dismiss for lack of jurisdiction or, in the alternative, to compel individual arbitration and for a stay. (D.E. 74.) NPC argued that each of the Plaintiffs had signed a mandatory arbitration agreement when they applied for employment with NPC, and thus, this Court did not have jurisdiction over the FLSA claims. (*Id.*) Defendant further averred that the arbitration issue should be evaluated individually as to each opt-in Plaintiff instead of considering the Plaintiffs as a group. *Gunn*, 625 Fed. App'x at 267. Plaintiffs then filed a motion for conditional certification of a collective action under § 216(b) of the FLSA. (D.E. 79.) Before ruling on the motion, the Court denied Defendant's pending

---

[2] Redmond was a party in two cases: the instant action, on behalf of former and current customer service representatives, and *Gunn v. NPC Int'l*, No. 13-1035 (W.D. Tenn. filed Jan. 30, 2013), brought by current and former tipped employees. Skylar Gunn had accepted the Defendant's offer of a $5,000 judgment, and the *Gunn* opt-in Plaintiffs—of which Redmond was one—had agreed to be bound by his decisions. NPC argued that as Gunn settled his case with NPC, Redmond's opt-in case as a tipped employee was also settled. Consequently, NPC asserted that Redmond's suit as a customer service representative and that of the *Redmond* opt-in Plaintiffs was either settled or barred. The first link in this reasoning was rejected in the Magistrate Judge's Report and Recommendation on the Defendant's motion to dismiss in *Gunn* (D.E. 64), adopted by this Court. (D.E. 68.) The Court held that Gunn's settlement did not affect any other Plaintiff's ability to bring suit. (D.E. 64.)

motion to dismiss or compel arbitration. (D.E. 105.) NPC appealed the denial. (D.E. 109.) The Court also dismissed Plaintiffs' motion for conditional certification without prejudice for administrative purposes, (D.E. 119), and Plaintiffs moved to equitably toll the claims of all opt-in plaintiffs. (D.E. 120.) The motion was denied on grounds that the then-pending appeal rendered this Court without jurisdiction to consider the issue of equitable tolling. (D.E. 127.)

The Sixth Circuit issued its ruling on August 28, 2015, upholding this Court's denial of the motion to dismiss. (D.E. 133.) The appellate court found that NPC delayed almost fifteen months before raising the arbitration issue in any of the five cases. (D.E. 134.) "Indeed," the court stated, "the timing of NPC's tardy assertion of its right tends to corroborate the district court's conclusion, in denying reconsideration, that NPC was 'employing dilatory tactics and creating expense for the Plaintiffs.'" *Gunn*, 625 Fed. App'x at 265. The Sixth Circuit approved this Court's finding that NPC was sufficiently on notice of the claims against it as of the date of filing in January, 2013. *Id.* Moreover, it held that adopting NPC's approach would undermine the remedial design of the FLSA collective action mechanism, i.e., efficient vindication of employees' rights. *Id.* at 267-68. The court stated,

> [b]ecause all five cases were brought in the same court and assigned to the same judge, and all plaintiffs are represented by the same counsel and assert claims for violations of FLSA rights pursuant to the same uniform policies, the effects of NPC's failure to timely raise arbitration—in unnecessary delay and expense—is effectively the same for all plaintiffs, irrespective of when they opted in. In relation to the issues posed by the waiver question, all plaintiffs are "similarly situated." Here too, as we observed in *O'Brien*, "it is clear that plaintiffs are similarly situated when they suffer from a single FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." . . . [E]ach opt-in plaintiff's filing of consent to join "did not substantially alter the scope or theory of this matter in such a way as to revive the defendant's right to compel arbitration."

*Id.* at 267.

Once the Sixth Circuit issued its mandate, the Plaintiffs filed a second motion to certify class (D.E. 137) and a second motion for equitable tolling on behalf of the opt-in and potential opt-in plaintiffs (D.E. 139). The Plaintiffs asserted that the statute of limitations for FLSA claims should be tolled as to all Plaintiffs who have already opted in and as to those who have yet to join the action. (*Id.*) Without tolling, Redmond insisted that the statute of limitations would continue to run "against potential opt-ins [who] will suffer severe prejudice, including possible preclusion from bringing any claim, due not to their own delay but to Defendant's extreme delay in this case." (*Id.* at 2.) As to those who have already opted in, the Plaintiffs maintain that they would have consented to join the lawsuit earlier had they received timely notice; however, Defendant's procedural maneuverings had prevented it. (*Id.* at 1.) Plaintiffs aver that without tolling, their claims and those of all potential opt-in Plaintiffs will be significantly diminished, and NPC will consequently benefit from its own dilatory tactics. (*Id.*) Defendant responds that the motion for equitable tolling is premature and/or without merit. (D.E. 146.)

### III. APPLICABLE LAW

FLSA lawsuits are unique in character as they are statutory mechanisms by which employees may assert their rights to fair labor conditions against their employers. *See Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 509-11 (1950) ("[T]he primary purpose of Congress . . . was to eliminate, as rapidly as practicable, substandard labor conditions throughout the nation."). The statutory scheme was designed by Congress to "correct labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general

well-being of workers." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (quoting *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 143 (6th Cir. 1977)). The FLSA is designed to be "a broadly remedial and humanitarian statute." *Fegley v. Higgins*, 19 F.3d 1126, 1132 (6th Cir. 1994) (quoting *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 143 (6th Cir. 1977)). As such, the Sixth Circuit construes the Act's provisions "liberally to effectuate the broad policies and intentions of Congress." *Id.* (quoting *Dunlop*, 548 F.2d at 144).

Under the FLSA, a lawsuit to recover unpaid compensation must "be commenced within two years after the cause of action accrued," unless the action arose "out of a willful violation," in which case the lawsuit must be initiated within three years after accrual. 29 U.S.C. § 255(a). Under the continuing violation doctrine, "a cause of action is deemed to accrue, as a general rule, at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Archer v. Sullivan County*, Nos. 95–5214, 95–5215, 1997 WL 720406, at *2 (6th Cir. Nov. 14, 1997) (quoting *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir.), *modified on other grounds*, 826 F.2d 2 (5th Cir. 1987)). Subject to certain exceptions, an action is "commenced" on the date the complaint is filed. 29 U.S.C. § 256. In the case of a collective action, if an individual claimant does not immediately file written consent to become a party plaintiff, or if the individual claimant's name does not appear on the initial complaint, plaintiff's action is considered to be "commenced" when he files written consent. 29 U.S.C. § 256(b). The FLSA has an "opt-in" mechanism that presumes a lapse of time between the date a collective action is commenced and the date that each opt-in plaintiff files his or her consent form. *Id.* However, for opt-in plaintiffs, the statute of limitations continues to run until the plaintiff files the form. 29 U.S.C. § 256(b). Procedural

events can delay notice to and joinder of opt-in Plaintiffs. Motions to dismiss and motions to enforce arbitration are two such examples.

The equitable tolling doctrine is read into every federal statute. *U.S. v. $57,960.00 in U.S. Currency*, 58 F. Supp. 2d 660, 664 (D.S.C. 1999) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). It is an equitable doctrine that permits courts to extend the statute of limitations on a case-by-case basis to prevent inequity. *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998). The decision to invoke equitable tolling in a particular case lies solely within the discretion of the trial court. *Id.*

When analyzing equitable tolling outside of the habeas corpus context, the Sixth Circuit considers the following factors: "(1) lack of actual notice of the filing requirement, (2) lack of constructive knowledge of filing requirement, (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988).[3] However, these factors are not necessarily comprehensive. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citing *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003)). Not every factor will be relevant in all instances, and the trial court has the discretion to consider other factors that equity demands. *Id.* It is the plaintiff's burden to demonstrate why he or she is entitled to equitable tolling of the statute of limitations. *Id.*

---

[3] The Defendant argues that this Court should abandon the *Andrews v. Orr* multifactor considerations in favor of the two-pronged *Holland v. Florida* test, which has been utilized by the Sixth Circuit to decide the propriety of equitable tolling solely within the habeas corpus context. 560 U.S. 631, 649 (2010); *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750 (6th Cir. 2011). Defendant, however, points to no authority that persuades the Court that either the Supreme Court or the Sixth Circuit has intended to extend *Holland*'s application.

In collective wage and employment cases, courts regularly grant equitable tolling so that plaintiffs may assert their claims despite the kinds of delays inherent in such litigation. The logic of this is clear upon considering the fact that the defendant initially is the party in sole possession of the names and last known physical addresses of all potential opt-in Plaintiffs. *See, e.g.*, *Andrews*, 851 F.2d at 146; *White v. Publix Super Markets, Inc.*, No. 3:14-CV-1189, 2015 WL 6510395, at *1 (M.D. Tenn. Oct. 28, 2015); *McLeod v. Just Energy Mktg. Corp.*, 2015 Wage & Hour Cas. 2d (BNA) 278029 (N.D. Ohio Aug. 27, 2015); *Bacon v. Subway Sandwiches & Salads, LLC*, No. 3:14-CV-192-PLR-HBG, 2015 WL 1138387, at *2 (E.D. Tenn. Mar. 13, 2015); and *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842 (S.D. Ohio 2013). Without the possibility of equitable tolling, the value of FLSA collective actions would routinely be diminished to the point of being unfeasible—as the potential recovery for the plaintiff class continuously lessens as cases are delayed. *Cf.*, *Gunn*, 625 Fed App'x at 267.

## IV. ANALYSIS

As a threshold matter, the Defendant proposes that the Court conduct an individualized inquiry into each of the Plaintiffs' claims and, in the future, those of the opt-in Plaintiffs to determine whether that person's assertions deserve application of the equitable tolling doctrine. (D.E. 206 at 6.) The Defendant's actions have delayed this case such that the Court now considers the motion for equitable tolling over three years after the initial filing. *See Gunn*, 625 Fed. App'x at 263. While equitable tolling is decided on a <u>case-by-case</u> basis, there is no requirement that it be decided on a <u>plaintiff-by-plaintiff</u> basis. *See, e.g.*, *White*, 2015 WL 6510395 at *6; *Bacon*, 2015 WL 1138387 at *2; *see also Gunn*, 625 Fed. App'x at 267 (finding the Plaintiffs are similarly situated and, thus, not eligible for individualized consideration of how

8

the arbitration agreement applies). Thus, the Court finds that no value can be obtained from protracting this litigation any further through an individualized, fact-intensive inquiry into how the equitable tolling standard applies to each Plaintiff. Accordingly, the Plaintiffs will be treated as a group for the purposes of this motion. *Cf.*, *Gunn*, 625 Fed. App'x at 267.

Moreover, NPC contends that Plaintiffs' motion for equitable tolling is premature. This argument is similarly unpersuasive. The Court first notes that, from the beginning, NPC has clearly anticipated the statute of limitations being an issue—as it was one of the affirmative defenses raised. (D.E. 73 at 10.) However, due to the delays, the Court has not yet had the opportunity to address the matter of providing Court-approved notice to potential opt-in Plaintiffs—as is regular in FLSA actions. *See, e.g.*, *Monroe v. FTS USA, LLC*, 257 F.R.D. 634, 637, 2009 WL 736003 (W.D. Tenn. 2009) *aff'd*, No. 14-6063, 2016 WL 814329 (6th Cir. Mar. 2, 2016). Nor has evidence been presented that Defendant advised opt-in Plaintiffs of their FLSA rights and/or the filing obligations incumbent upon them to protect those rights. Of the two parties, Defendant appears to be in sole possession of any database of such Plaintiffs—i.e. employment records of current and former employees. *See Thompson v. Direct Gen. Consumer Prods., Inc.*, No. 3:12-cv-1093, 2014 WL 884494, at *8 (M.D. Tenn. Mar. 5, 2014). Accordingly, the Court can find no just reason to delay taking up the matter of equitable tolling as to any group of opt-in Plaintiffs. *See id.*

The Court next analyzes the *Andrews* factors for equitable tolling. 851 F.2d at 146. As discussed *supra*, no Plaintiff has received Court-approved notice of the filing requirements in this FLSA lawsuit, and no assertion has been made that NPC has advised its employees of those requirements. Plaintiffs assert that actual and constructive notice of the filing requirements was

lacking.  Although NPC stresses the fact that the Plaintiffs' attorneys have created a website to attract potential opt-in Plaintiffs, the passive website, in fact, does not appear to notify visitors of the filing requirements but instead simply asks a series of questions in order to determine if a website visitor is a potential opt-in Plaintiff.  NPC Off the Clock, http://npcofftheclock.com/ (last visited Mar. 25, 2016).  The website advises that a lawsuit has been filed, but effectively does nothing more.  Thus, even if a potential opt-in Plaintiff were to go to the website, it does not serve as actual notice of the filing requirements.  Accordingly, this factor weighs in favor of equitable tolling.

Defendant contends that opt-in Plaintiffs have had constructive knowledge of the filing requirement by virtue of the existence of the FLSA, the website, and two press releases.  Plaintiffs, however, stress that this does not serve as constructive knowledge.  Constructive knowledge is a legal fiction created to attribute knowledge that a person or entity using reasonable care or diligence should have.  *See* Knowledge, Black's Law Dictionary (10th ed. 2014).  To impute knowledge to the opt-in Plaintiffs, the Court would have to assume that they knew or should have known what constituted a wage violation, that their employer was committing a wage violation against them, and the filing requirements under 9 U.S.C. § 255 in order to assert their rights.  *See, e.g.*, *Archer v. Sullivan Cty. Tenn.*, 129 F.3d 1263, 1997 WL 720406, *4 (6th Cir. 1997) (unpublished table opinion).  To do this would unreasonably stretch the bounds of constructive knowledge.  *Cf.*, *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 874, 2012 WL 5392621 (6th Cir. 2012) (quoting *Hertz v. Woodbury Cty., Iowa*, 566 F.3d 775, 782 (8th Cir. 2009) ("The FLSA's standard for constructive knowledge in the overtime context is whether the County 'should have known,' not whether it could have known.")

(emphasis added)). The Sixth Circuit has stated that "ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991). Nevertheless, imputing nuanced and personalized knowledge of the law in every case would lead to illogical results: every employee would be presumed to have constructive knowledge of the FLSA filing requirements each time her employer committed a wage violation, and this factor would always weigh against equitable tolling. *See Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 828 (S.D. Ohio 2007). Accordingly, this factor weighs in favor of equitable tolling of the statute of limitations.

The Court next inquires whether the Plaintiffs were diligent in the pursuit of their rights. Those Plaintiffs who have opted in have filed affidavits with the Court stating that they did so shortly after learning about the current litigation. (D.E. 139-2.) Thus, to the extent that this applies to them, they appear to have been diligent, and this factor weighs in favor of equitable tolling. As to the potential opt-in Plaintiffs, the mechanism of Court approval of notice is in place to provide a reliable method of contacting all those workers who might have a stake in the litigation. Had those contacted been dilatory in choosing to opt in, the diligence factor would apply to their cases. However, at this point, the diligence question does not apply to potential opt-in Plaintiffs. *See Struck*, 931 F. Supp. 2d at 848 (employing the 6th Circuit's multi-factor test to equitably toll the FLSA claims of opt-in plaintiffs); *Baden-Winterwood*, 484 F. Supp. 2d at 828 (same).

The fourth factor is whether equitably tolling the statute would prejudice the Defendant. NPC has been on notice since January, 2013 that it may be liable for FLSA claims accrued three years prior. *See Gunn*, 625 Fed. App'x at 267; *see also Gray v. Phillips Petroleum Co.*, 858 F.2d

11

610, 616 (10th Cir. 1988) (tolling statute of limitations where plaintiffs were lulled into inaction and defendant did not show that any "significant prejudice" would result from allowing plaintiffs to proceed; defendant was "fully apprised" of the plaintiffs' claims). During the three years between the filing of the original complaint and now, the Defendant has very actively litigated this case and strenuously objected at every possible point. Although the rulings have largely not been favorable to the Defendant, the delays have had the effect of making the Plaintiffs' claims a moving target, diminishing them each day due to the ever-running statute of limitations. *See Thompson*, 2014 WL 884494 at *8; *see also Stransky v. HealthONE of Denver*, Inc., 868 F. Supp. 2d 1178 (D. Colo. 2012). NPC, as the keeper of the employment records, is presumably aware of the size of the potential Plaintiff pool and has had time to calculate the possible liability posed by the litigation. Thus, no real prejudice would result from tolling the statute of limitations. Accordingly, this factor weighs in favor of equitable tolling.

The fifth factor inquires whether the Plaintiffs were reasonable in remaining ignorant of the filing requirement. The Sixth Circuit has recognized that "ignorance of a filing requirement may be reasonable under certain circumstances to warrant equitable tolling." *Baden-Winterwood*, 484 F. Supp. 2d at 829 (citing *Allen*, 366 F.3d at 401). As previously discussed, those Plaintiffs who have already opted in, did so within a relatively short period of learning about the litigation. Thus, they did not remain ignorant, and this factor does not apply to them. Those who have not opted in cannot be said to be unreasonably ignorant, as no Court-approved notice has been issued to them. Here, the vast majority of potential opt-in plaintiffs were never informed of either the FLSA lawsuit or of Defendant's potential wage violations, and they will not be advised of such until the Court approves a notice mechanism. By that time, it is most

likely that a substantial portion of those claims will already be untimely. *See Stickle v. SCIWestern Mkt. Support Ctr., L.P.*, RICO Bus. Disp. Guide 11584, 2008 WL 4446539, *22 (D. Ariz. Sept. 30, 2008) ("As the Supreme Court noted in *Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 . . . (1989), the inherent benefits of the collective action 'will disappear' if plaintiffs are not notified of the suit before their statute of limitations expires."). Thus, it is reasonable that putative class members who received no notice of the pendency of this action would remain ignorant of the filing deadline. To the extent that it applies, this factor weighs in favor of equitable tolling.

Having found that the interests of justice weigh heavily in favor of tolling the FLSA's statute of limitations as to all opt-in Plaintiffs, the Court must now decide when to begin the tolling period. The Plaintiffs request that the tolling period begin on April 30, 2014, the date of the first motion to certify class for conditional certification. (D.E. 79.) However, the Defendant argues, in effect, that October 31, 2014, is the appropriate tolling date. Courts in this circuit have followed different approaches in setting the date for equitable tolling. *Compare, e.g.*, *White*, 2015 WL 6510395, at *6 (tolling FLSA plaintiffs' claims as of the date of filing of the original complaint), *with Struck*, 931 F. Supp. 2d at 848 (tolling FLSA plaintiffs' claims as of the date plaintiffs sought to notify putative class members of the pending action).

As previously discussed, delays in this case commenced shortly after the filing of the amended complaint. The outcomes of the motions to dismiss and appeals have not favored Defendant, but they have served to protract this litigation. Following the approach requested by the Defendant, the Court agrees that the goal of equitable tolling, to the extent possible, is to put the Plaintiffs in the same position in which they would have been had the delays not occurred.

(D.E. 146 at 19-20.) Accordingly, the Plaintiffs' claims will be tolled as of the date that the first motion for conditional certification could have been fully briefed under the scheduling order in place at the time: June 30, 2014. *See Thompson*, 2014 WL 884494, at *10 ("[T]he earliest the Court could have conditionally certified the class is some time after the parties fully briefed the motion."). In the event that the Plaintiffs' second motion for conditional certification is granted, the tolling period shall be extended until ninety days after the issuance of Court-approved notice to potential Plaintiffs. In the event that the motion is denied, the Court may revisit the issue of equitable tolling.

## *VII. CONCLUSION*

For the aforementioned reasons, the Court GRANTS the motion for equitable tolling as to all opt-in Plaintiffs and potential opt-in plaintiffs.

IT IS SO ORDERED this 29th day of June, 2016.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE